INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Appellant,

v.

BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, Appellee.

No. 19712.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 28, 1966.

Decided March 22, 1966.

Mr. Herbert S. Thatcher, Washington, D. C., with whom Messrs. David S. Barr, Washington, D. C., and David Previant, Milwaukee, Wis., were on the brief, for appellant.

Mr. James L. Highsaw, Jr., Washington, D. C., with whom Messrs. Edward J. Hickey, Jr., and William J. Hickey, Washington, D. C., were on the brief, for appellee.

Before FAHY, Circuit Judge, BASTIAN, Senior Circuit Judge, and TAMM, Circuit Judge.

## PER CURIAM.

The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, herein IBT, sued in the District Court the Brotherhood of Railway Steamship Clerks, Freight Handlers, Express and Station Employees, herein BRC, seeking a declaratory judgment and other relief. Interim relief was denied to IBT and its complaint thereafter was dismissed. This appeal followed, pending which interim relief was also denied by this court.

The essence of IBT's position is that the District Court erred in refusing to require BRC to withdraw an application concerning representation which it had filed March 23, 1965, with the National Mediation Board under § 2, Ninth, of the Railway Labor Act, 45 U.S.C. § 152. The application sought certification of BRC as the collective bargaining representative, with certain exceptions immaterial to this case, of employees of REA Express, Inc. Some of the employees were then represented by IBT, and others by BRC. The position of IBT is that the application was in violation of an agreement between the two labor organizations entered into June 10, 1937, and since then incorporated in collective bargaining agreements between IBT and REA Express, Inc.

On facts undisputed insofar as necessary for determination of the right of IBT to require withdrawal of BRC's application, each organization moved for summary judgment, IBT unsuccessfully, BRC successfully, resulting in dismissal of the former's complaint.

In its application to the Board BRC claimed that all employees of REA in the "craft or class of Clerical, Office, Station and Storehouse Employes," including those then represented by IBT, constituted a single craft or class for representation purposes. In the proceedings before the Board IBT opposed the application, and was accorded a hearing on its objections. The principal objection, as we have indicated, was based on the June 10, 1937 agreement, which was the result of Board mediation of a dispute between the two organizations. IBT contends that the agreement constituted a no-raid arrangement which bars BRC from seeking to represent employees of REA in certain specified cities and that BRC's application to the Board violated the agreement.[1]

---

1. The pertinent provisions of the 1937 settlement read:

*Article 1.*
SCOPE
Employes Affected—Rule 1. These rules shall govern the hours of service and working conditions of all employes in service of the Railway Express Agency in the United States subject to the exceptions noted below:

*Exceptions*
These rules shall not apply to—
(a) * * *
Chauffeurs and helpers, stablemen and garagemen who are now represented by the International Brotherhood of

As we have said the Board accorded IBT a hearing on its objections. IBT also requested the Board to interpret the agreement. After the hearing and consideration of this request the Board on September 8, 1965, ruled:

On the basis of the entire record before it, the Board concludes that the provisions of the mediation agreement of June 10, 1937, do not constitute a so called perpetual no-raid pact between the organizations. It further finds that the BRC has not violated that agreement by filing their application for the investigation of a representation dispute under Case R–3750. The IBT application of June 4, 1965 is hereby dismissed.[2]

Thereafter an election was ordered by the Board. It was then that IBT brought its action in the District Court. Interim relief to prevent the election having been denied it was conducted and resulted in the Board certifying BRC as the representative for purposes of the Railway Labor Act of the craft or class of REA employees involved, which included employees of REA theretofore represented by IBT.[3]

It will be seen from the foregoing that the equity jurisdiction of the District Court was sought to be invoked only after the Board had granted a hearing to IBT on its objections based on the agreement, after IBT had requested the Board to interpret the agreement, and after such interpretation had been made and a de-

cision rendered by the Board on IBT's objections.

Thus the question is whether after all this had occurred under the provisions of the Railway Labor Act, the District Court should have awarded IBT relief in the nature of a mandatory injunction requiring BRC to withdraw its application for representation filed under that Act with the Board.

IBT relies primarily upon United Textile Workers of America, AFL–CIO v. Textile Workers Union, 258 F.2d 743 (7th Cir.). There the court did require a labor organization to request withdrawal of a representation petition it had filed with the National Labor Relations Board claiming rights which the court held violated a "No-raiding Agreement" with the plaintiff union. We need refer to but one feature of our case which distinguishes it from the cited case. There the interpretation of the agreement had not been submitted to, heard and decided by the Labor Board, whereas here the Mediation Board had heard and considered IBT's objections to the application under Section 5, Second, of the Railway Labor Act, and had interpreted the agreement at the request of plaintiff union, resulting in the Board's ruling to which we have referred.

■■ The status the controversy had attained before IBT filed the present action in the District Court left the court free to refuse to exercise its equity jurisdiction to determine the correctness vel

Teamsters, Chauffeurs, Stablemen and Helpers of America in the following cities: Cincinnati, Ohio, Cleveland, Ohio, Newark, N. J., New York, N. Y., Philadelphia, Pa., St. Louis, Mo., San Francisco, Calif., Chicago, Ill., and in any other city in which a majority of chauffeurs and helpers, stablemen and garagemen may hold membership in the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America.

2. The IBT application of June 4, 1965, thus referred to, was a request under Section 5, Second, of the Act, 45 U.S.C. § 155, for the Board to interpret the agreement of June 10, 1937. Section 5, Second, provides:

In any case in which a controversy arises over the meaning or the application of any agreement reached through mediation under the provisions of this chapter, either party to the said agreement, or both, may apply to the Mediation Board for an interpretation of the meaning or application of such agreement. The said Board shall upon receipt of such request notify the parties to the controversy, and after a hearing of both sides give its interpretation within thirty days.

3. On October 13, 1965, IBT filed a separate action in the District Court against the Board itself. This litigation is still pending. We intimate no view with respect to it.

*non* of the decision of the Board in litigation between the two labor organizations. That decision, including the jurisdiction of the Board to render it, is appropriately left to be tested, if at all, as a decision of the National Mediation Board under the Railway Labor Act.[4]

Affirmed.